JOURNAL ENTRY and OPINION
{¶ 1} In 2002, a jury found defendant Joshua Madsen guilty of six counts of rape and one count of kidnapping against his former girlfriend. The state showed that Madsen became angry when the victim held a party to celebrate their breakup, and retaliated by kidnapping her and raping her. Before any action could be taken on a direct appeal filed with this court, Madsen filed a petition for postconviction relief. That petition set forth nine separate claims of ineffective assistance of counsel (a tenth claim argued cumulative error). While the petition was pending at the court, we affirmed Madsen's conviction on direct appeal. See State v.Madsen, Cuyahoga App. No. 82399, 2003-Ohio-5822. We also disallowed claims of ineffective assistance of appellate counsel in an application to reopen the appeal. See State v. Madsen,
Cuyahoga App. No. 82399, 2003-Ohio-5822, reopening disallowed (Sept. 14, 2004), Motion No. 356023. The court then granted the state's motion to dismiss the petition for postconviction relief on grounds that the ineffective assistance of counsel claims were barred by principles of res judicata. The court found that Madsen failed to prevent "competent, relevant and material evidence" outside the record to establish his claims.
 I {¶ 2} R.C. 2953.21(A)(1)(a) permits an offender to raise issues relating to a denial or infringement of the offender's rights such that the judgment of conviction is void or voidable under the state or federal constitutions, and to vacate or set aside the judgment or sentence or to grant other appropriate relief.
 {¶ 3} Principles of res judicata apply to such petitions, however, to bar the assertion of claims that were or could have been raised on direct appeal. See State v. Perry (1967),10 Ohio St.2d 175, paragraph 10 of the syllabus. Thus, a petitioner cannot raise an issue in a motion for postconviction relief if that issue could have been raised on direct appeal. State v.Duling (1970), 21 Ohio St.2d 13.
 {¶ 4} When postconviction claims relate to the effectiveness of trial counsel, the petitioner must show that counsel's actions were outside the wide range of professionally competent assistance and that the petitioner was prejudiced as a result of counsel's actions. Strickland v. Washington (1984),466 U.S. 668, 689. To do this, the petitioner must submit evidentiary documents containing sufficient operative facts to demonstrate the alleged constitutional violation. State v. Jackson (1980),64 Ohio St.2d 107, syllabus. Even though a petitioner includes affidavits in support of a petition for postconviction relief, the court is under no obligation to accept the veracity of those affidavits, and may determine the credibility of supporting affidavits based on normal factors used to determine the credibility of witnesses. See State v. Calhoun,86 Ohio St.3d 279, 285, 1999-Ohio-102.
 {¶ 5} We address in turn the following claims for relief that Madsen argues constituted violations of his right to effective counsel at trial:
 {¶ 6} 1. Failure to research the nature of a telephone answering machine message Madsen left for the victim, the timing of which he maintains would have cast doubt on the state's claim that the message had been left three days before the incident.
 {¶ 7} Madsen's petition concedes that counsel filed a motion in limine regarding this message, seeking to have it excluded as other acts evidence or as unfairly prejudicial. Even though Madsen now argues that counsel should have sought admission of the message on different grounds, res judicata applies because the issue could have been raised at trial.
 {¶ 8} 2. Failure to obtain and present the testimony of several persons who allegedly would have testified that Madsen and his girlfriend were the objects of harassment by the victim, whom Madsen claims was actually "a woman scorned."
 {¶ 9} The court properly denied this claim, as Madsen offered no proof of what these witnesses would have testified to at trial. Madsen told the court that there were four witnesses that should have been called, but he did not offer any affidavits from three of the witnesses. Instead, he told the court that the affidavits were either "on the way" or "waiting to obtain." A petitioner seeking postconviction relief on grounds of ineffective assistance of counsel has the burden of proving the claim since a properly licensed attorney is presumed to be competent. Jackso n. 64 Ohio St.2d at 110-111. Without the affidavits, Madsen did not carry his burden of proving counsel's alleged errors.
 {¶ 10} Madsen did offer a notarized "declarations statement" by one Darryl Wilson who averred that the victim frequently told him of her displeasure with Madsen's decision to become involved with another woman and her desire to "get even with Mr. Madsen for causing her such pain." The statement does not include any firsthand knowledge of the offense, so it would have been of dubious relevance in the context of trial. Moreover, even if Wilson's testimony had been offered consistent with the statement, we find nothing in it to make us believe that there would have been a reasonable probability that the result of the trial would have been different.
 {¶ 11} 3. Failure to show that Madsen could not have been drunk at the time of the offense as he was a recovering alcoholic. Madsen argued that counsel should have offered evidence that Madsen had been sober at the time of the offense, a fact that would have been verified by his Alcoholics Anonymous sponsor.
 {¶ 12} Again, Madsen did not include the affidavit of his sponsor, so the court properly rejected this claim.
 {¶ 13} Moreover, in postconviction proceedings, relevant evidence is considered as that which materially advances a claim relating to the denial or infringement of a constitutional right.State v. Curry (July 25, 1996), Cuyahoga App. No. 69633. Madsen's brief period of sobriety would not be relevant to show his actual condition on the night of the offense, so it is unlikely that counsel's failure to investigate this matter constituted the violation of an essential duty. Finally, Madsen can only say that he had been sober since July 16, 2002, and the offense occurred on August 5, 2002. Counsel could well have decided that a three week period of attending AA meetings would not have convinced the jury that Madsen was a recovering alcoholic who could not have been drunk at the time of the offense.
 {¶ 14} 4. Failure to present evidence relating to the victim's motivations in seeking medical attention from EMS personnel in 2001. EMS received a call that the victim had been sexually assaulted, but when they arrived, she denied being the victim of a sexual assault and instead told them she believed that someone had spiked her drink. Madsen argues that these facts were set forth in a police report of the incident and that counsel should have brought up this evidence to show that the victim had a propensity to "cry rape" as a means of getting attention.
 {¶ 15} Madsen did not include any evidence to support this allegation. He told the court that he was "still trying to obtain the report," so by his own admission he failed to substantiate the claim. He did maintain that he told trial counsel about the incident, but he did not include an affidavit from counsel which would have substantiated that fact. This made the statement purely self-serving and not worthy of credit by the court.
 {¶ 16} 5. Failure to corroborate the existence of the victim's bruising as detailed by medical personnel after the rape. Madsen notes that two medical providers noted that the victim had a three to five inch bruise on her back on August 9, 2002, but that on August 12, 2002, a videotape of the victim did not show that bruise or any marks from the rape. He argues that counsel should have brought out this fact in order to impeach the victim and show that her pain was "exaggerated sufficiently to fool medical personnel."
 {¶ 17} The state correctly argued that photocopied still photos taken from the videotape utterly failed to establish Madsen's argument. Besides being of poor quality, the still photos do not actually show the face of the person depicted so that the court could determine if the still photos really did show the victim. In any event, they did not depict the condition of the victim on the day she was examined by medical personnel, so they would not be relevant to show the extent of bruising she suffered during the rape.
 {¶ 18} 6. Failure to elicit evidence that the victim had previously filed a sexual assault complaint under false pretenses. Although counsel was denied a request to present evidence of the victim's past sexually transmitted diseases by virtue of the Rape Shield Statute, R.C. 2907.02, Madsen argues that counsel should have sought admission of that evidence on grounds that the victim suffered from pelvic inflammatory disease.
 {¶ 19} Madsen did not include any expert testimony on pelvic inflammatory disease. He simply provided the court with literature that describes the disease and its causes. Absent such expert testimony, the court had no obligation to consider Madsen's arguments, as they were nothing more than a backhanded way of seeking to admit that which the court had refused to admit. Having been denied the opportunity to present evidence of sexually transmitted diseases, counsel cannot be faulted for failing to seek another inadmissible basis for eliciting the evidence.
 {¶ 20} 7. Failure to investigate more thoroughly the victim's mental state, particularly after she admitted to seeking counseling for depression following the rape. Madsen argues that counsel should have explored whether the victim suffered from personality disorders that might give a motive to fabricate the charges.
 {¶ 21} Again, while Madsen provided medical literature on the subject of depression and mental illness, that literature alone was insufficient to establish that counsel violated an essential duty with the absence of an expert. See State v. Tibbets (Mar. 30, 2001), Hamilton App. No. C-000303 (denying postconviction relief claim where defendant presented literature relating to effect of depression medication without expert testimony relating to pharmacology).
 {¶ 22} 8. Failure to impeach the victim's statement that she did not know it was Madsen who tried to gain entrance to her house on the day of the rape.
 {¶ 23} Clearly, this claim is barred by res judicata as matters relating to impeachment of trial testimony could have been raised on direct appeal.
 {¶ 24} 9. Failure to permit Madsen to testify in his own defense.
 {¶ 25} Again, this claim could have been raised on direct appeal. Cf. State v. Raglin (June 25, 1999), Hamilton App. No. C-980425 (res judicata applied to question of ineffective assistance of counsel relating to failure to have defendant testify at suppression hearing).
 {¶ 26} 10. Cumulative error.
 {¶ 27} As we have found no basis for any of the individual claims for relief contained in the petition, it follows that there is no cumulative error.
 {¶ 28} Likewise, since the asserted claims were either barred by res judicata or unsupported by proper evidence, the court had no duty to conduct a hearing on the petition. See State v.Tucker, Cuyahoga App. No. 84595, 2005-Ohio-109, at ¶ 11.
 III {¶ 29} Madsen next argues that the court erred by denying his request for the appointment of an expert to assist him in preparing his claim relating to the victim's alleged pelvic inflammatory disorder. This argument is meritless because a postconviction petitioner has only those rights granted by statute, and the statute does not grant a right to the appointment of an expert. See State v. Stedman, Cuyahoga App. No. 83531, 2004-Ohio-3298, at ¶ 36.
 IV {¶ 30} In several passages, the court's findings of fact and conclusions of law adopt verbatim argument made by the state in its motion to dismiss the petition for postconviction relief. While acknowledging that it is not per se error for the court to do so, Madsen argues that the court's incorporation of the state's argument was error because that argument was "so clearly contradicted by the record," and thus deprived him of a meaningful judicial review.
 {¶ 31} This is simply a variant of the post hoc ergo propterhoc (after this therefore because of this) fallacy. The fallacy is based upon the mistaken notion that "Y follows X, then Y must be a result of X." In other words, Madsen believes that the state's motion to dismiss the petition was so lacking in basis that the court's adoption of various parts of that motion means that its judgment is equally lacking in basis. The flaw with this reasoning is that it confuses correlation with causation. We have found the petition wholly lacking in merit, just as the court did. Our decision to write separately and not adopt the court's findings doesn't mean that we gave the case any better review than the court did. There is simply no rational basis for Madsen's argument.
 {¶ 32} The assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Rocco, J., concur.